# In re Anonymous Nos. 28 D.B. 73 and 14 D.B. 76

Disciplinary Board Docket nos. 28 D.B. 73 and 14 D.B. 76.

To the Honorable Chief Justice and Justices of the Supreme Court of Pennsylvania:

HARRINGTON, *Board Member*, April 4, 1978 —Pursuant to Rule 208(d) of the Pennsylvania Rules of Disciplinary Enforcement (rules), the Disciplinary Board of the Supreme Court of Pennsylvania (board), herewith submits its findings and recommendations to your honorable court with respect to the above proceeding.

## I. HISTORY OF PROCEEDINGS

This matter comes before your honorable court on respondent's petition for reinstatement following a

suspension at no. 28 D.B. 73, as well as a report and recommendation of the disciplinary board on matters relating to discipline at no. 14 D.B. 76.

By order of the Supreme Court of Pennsylvania dated November 24, 1975, respondent was suspended from the practice of law for a period of three months, effective December 24, 1975. This suspension resulted from proceedings on a petition for discipline docketed at no. 28 D.B. 73, no. 110, Disciplinary Docket no. 1. The order of suspension gave respondent "the right to file application for readmission at any time following 30 days from the date of suspension."

Respondent's petition for reinstatement was filed with this honorable court and referred to a hearing committee [ ] then composed of the Honorable [A], chairman, and [ ], Esq., along with [ ], Esq., members. On August 10, 1976, Chairman [A] tendered his resignation due to illness, which shortly thereafter resulted in his death. On August 20, 1976, this board appointed [ ], Esq., member of the hearing committee, and appointed [ ], Esq., as its chairman.

On March 2, 1976, petitioner filed with this court a petition to stay proceedings on the petition for reinstatement of [respondent], by which petition, it was brought to the court's attention that two additional disciplinary complaints had been filed against respondent, [ ]. In addition, the petition contained allegations that other instances of misconduct by respondent were being investigated. Petitioner requested the court alternatively, (1) to stay any further proceedings upon respondent's petition for reinstatement pending a final determination of the two aforementioned complaints, and grant petitioner 45 days to complete investigation of and seek review of additional matters, or (2) to stay any

further proceedings upon respondent's petition for reinstatement until petitioner could file a petition for discipline on the two aforementioned charges, to include any ripened additional charges.

By order dated April 1, 1976, your honorable court ordered further proceedings on respondent's petition for reinstatement stayed, pending the filing of a petition for discipline on the two complaints mentioned above, ordered that petitioner be granted 20 days from the date of that order to file a petition for discipline on these two complaints, and any other allegations which were determined to warrant formal charges, and ordered that the petition for discipline was to be forwarded to the same hearing committee to which the petition for reinstatement had earlier been referred.

On April 21, 1976, petitioner filed with the secretary of the disciplinary board a petition for discipline, said petition containing seven disciplinary charges. The petition was duly accepted and docketed by the secretary of the board, who thereupon forwarded the same to the members of the hearing committee [ ] on May 25, 1976.

After that date, the hearing committee received and acted on a number of matters presented by petitioner and respondent. Among those matters was respondent's motion to dismiss for lack of a speedy trial, which was denied: motion for a bill of particulars, filed by respondent, as well as respondent's motion to dismiss the petition for discipline, were both denied.

The first dates of hearings for the purpose of taking testimony were scheduled for December 14 and 15, 1976, at the [ ] Office, [ ] Street, [X], Pa. [ ]. At the conclusion of the hearing on the last scheduled day, additional hearings were scheduled for

January 7, 8 and 9, 1977. The hearing of January 7, was held as scheduled. About noontime on the second day, January 8, 1977, [ ], Esq., the sole assistant disciplinary counsel trying the case, was taken seriously ill and was admitted to a local hospital. At that time, the hearing was continued indefinitely by the chairman of the hearing committee. Thereafter, [ ], Esq., entered his appearance as counsel for petitioner, office of disciplinary counsel. On February 18 and 19, 1977, hearings were held and testimony was taken. Additional hearings were scheduled for March 9 and 10, 1977, at which time the taking of testimony was concluded. In addition to matters relating to the petition for reinstatement, the hearing committee took testimony relative to seven charges filed against respondent. Some time was taken by the hearing committee to study each of the charges and in most of them testimony was taken from witnesses appearing at one or more of the several hearings. Thereafter the record was further supplemented by the deposition of [ ], which was taken in [ ], Pa., on March 15, 1977.

On July 27, 1977, the report and recommendations of the hearing committee was filed. The hearing committee recommended ". . . that the petition for reinstatement be denied and that [respondent] be suspended from the practice of law for a period of five years from March 24, 1976."

Within 30 days thereafter, the briefs on exceptions had been filed by all parties and oral argument requested. The matter was referred for oral argument to a panel consisting of [ ], chairman of the panel, and [ ] and [ ], members of the panel. Oral argument was scheduled and held on September 6, 1977. At the oral argument each matter was argued

vigorously before the hearing panel in a proceeding that lasted over a period of nearly three hours. Thereafter, the matters were scheduled for adjudication at a regular meeting of the disciplinary board.

Both petitioner and respondent have taken exceptions to the findings and recommendations of the hearing committee. Their exceptions have been briefed extensively.

On October 31, 1977, a petition to reopen record (DBR 89.251(a)) was filed by chief disciplinary counsel. The petition alleged newly discovered or lately established facts on the basis of which petitioner charged [respondent] with maintaining certain signs visible to the public which proclaimed his identity as a lawyer. Petitioner also charged respondent with allowing his office to be used by other lawyers for the conduct of legal business, while respondent was present and with his professional assistance.

Respondent denied the allegations and challenged them on a constitutional basis.

By order dated November 18, 1977, [ ], chairman of the board, granted leave to reopen the proceeding and remanded to hearing committee [ ] for that purpose.

Evidence was received by the hearing committee at a hearing on December 21, 1977, in [X]. A report was filed on February 8, 1978, in which the committee found as a fact that respondent, [ ], did not participate in any legal fees or engage in any legal activity inconsistent with his suspension insofar as permitting his office to be used by other attorneys was concerned.

The hearing committee further found that the maintenance of signs proclaiming respondent to be

a lawyer was the subject of testimony taken at hearing in March, 1977, and was dealt with in the hearing committee's report dated July 26, 1977, on page 42 thereof. The hearing committee further concluded that the ". . . continued use of the respondent's office signs identifying him as a 'lawyer' and 'attorney-at-law' adversely reflects on his fitness to be readmitted to the practice of law."

The board has considered these matters at length and recommends to this honorable court that respondent's petition for reinstatement be denied and that he be suspended from the practice of law until March 1, 1979, with the right to petition for reinstatement on or after that date.

As previously stated, the exceptions have been briefed extensively and argued vigorously. For these reasons, each charge will be identified by number and name and while several of them will be discussed in a group of two, each charge has been considered individually.

## CHARGE 1—STATE TROOPER [B]

Respondent was charged at the hearing with violation of:

Disciplinary Rule 1-102(A)(2)—circumvention of a disciplinary rule through actions of another.

Disciplinary Rule 1-102(A)(5)—conduct prejudicial to the administration of justice.

Disciplinary Rule 1-102(A)(6)—conduct adversely reflecting upon his fitness to practice law.

Respondent represented one [C]. [C] was arrested and taken to jail by state trooper [B]. When respondent identified [B] as the arresting officer, he went to the police station inquiring as to [B's] whereabouts. When respondent was informed that

[B] was at the station but that [B] could be reached by telephone, respondent, while at the police station, called [B]. In the course of the conversation, respondent insulted [B], cursed him and threatened him and called him a "f_ _ _ _ _ _ pig cop" and told [B] that he was "going to make it tough on him" if [B] arrested any of respondent's clients in the future without first consulting him (respondent).

Respondent argues that he is protected by the First Amendment in his right to criticize [B] under "freedom of expression" provisions. He further argues that while the conversation may be offensive to most people, it isn't offensive to policemen since they deal in those terms frequently during the course of a normal day.

Petitioner argues that as to the First Amendment, respondent was not, in fact, expressing an opinion ". . . on a matter vital to the respondent . . ." and the First Amendment does not extend to ethical considerations but only to preclude findings of criminal culpability.

In the course of the transactions involving [C] and while dealing with state trooper [B], respondent proposed to the state trooper and [X] county district attorney to arrange for the return of certain previously stolen bonds to their owner. The bonds had been stolen in a burglary in [Y] County. Respondent also informed the district attorney of [Y] County that he could assist in the return of the stolen bonds if the district attorney in [Y] County would intercede to request leniency on behalf of [C].

The hearing committee found that respondent had violated D.R. 1-102(A)(6) by the insulting and derogatory remarks to the police officer. The hearing committee found no violation of the other disciplinary rules and the board agrees with that finding and conclusion.

## CHARGE 2—[D] AND [E]

Respondent was charged with violation of:

Disciplinary Rule 1-102(A)(4)—conduct involving dishonesty, fraud and deceit.

Disciplinary Rule 2-110(A)(3)—prompt refund of any part of fee paid in advance that has not been earned.

Disciplinary Rule 1-105(A)—dealing with declination of proffered employment if a conflict of interest is likely.

On February 1, 1975, [D] and [E], operating separate motor vehicles, were involved in a collision. [D] was injured and [E] was arrested for drunken driving.

Two months after the accident, [D] retained respondent to represent her in a claim for personal injuries.

Four months after the accident, [E] retained respondent to represent him in the criminal case involving the drunken driving charge arising from the accident on February 1, 1975.

Respondent accepted employment in both matters and took a fee from [E] and a contingent fee contract from [D].

Respondent disclosed the conflict of interest to both [D] over the telephone and [E] in person at approximately the same time in his office. [D] requested respondent to represent her and not [E]. Respondent misrepresented this request to [E] but [E] discharged respondent and requested the return of all of the fees paid to respondent. Respondent refused the request.

Respondent argues that he was not aware of the conflict between [D] and [E] and that there is no clear and convincing evidence that respondent misrepresented the fact of his representation to

either of the clients. Also, respondent contends that he cannot be found to have violated D.R. 5-105(B)—continuing multiple employment—since he was not charged with violation of that section of the code. The hearing committee found that respondent was guilty and had violated D.R. 1-102(A)(4), D.R. 5-105(A) and D.R. 2-110(A)(3). With these conclusions, the board agrees.

Respondent argues convincingly that he cannot now be charged under D.R. 5-105(B) and the board so finds. Respondent, therefore, never having been charged with a violation of D.R. 5-105(B), cannot be found to have violated the said disciplinary rule.

## CHARGE 3—MRS. [F]

Respondent was charged in this matter with violation of:

Disciplinary Rule 1-102(A)(6)—engaging in conduct adversely reflecting upon his fitness to practice law.

Disciplinary Rule 1-102(A)(4)—dishonesty, fraud, deceit.

Disciplinary Rule 4-101(B)(1)—revealing confidences of the client.

Mrs. [F] became a client of respondent in December of 1973, when she consulted with him concerning a motor vehicle accident. The professional relationship developed into an intimate personal one, which extended from the spring of 1974 to the spring of 1975. During that time, Mrs. [F] consulted with respondent concerning marriage problems and instructed respondent to commence a divorce proceeding. In the second week of January, 1975,

Mrs. [F] and respondent went to the prothonotary's office of [X] County, where a complaint in divorce was executed by Mrs. [F] and notarized by a clerk of that office. Mrs. [F] understood the divorce was to be filed then and that the purpose of taking the papers to the office was to that end. In fact, no divorce action was ever commenced by respondent.

As the intimate personal relationship developed, Mrs. [F] spent considerable amounts of time in the office of respondent, where she would fill in her idle time by "snooping through his files." (N.T. 281) In this fashion, she became acquainted with information concerning respondent's clients that should have remained confidential.

Respondent contended that there was no misrepresentation by him to Mrs. [F] concerning the divorce action since the divorce was "in process," that is, the complaint was prepared but not filed in accordance with Mrs. [F's] instructions.

Respondent further contends that there is no revelation of confidence since all of the information obtained from the files was public information and, at least in one case, respondent did not actually represent the person whose file was perused by Mrs. [F].

The hearing committee found that respondent was guilty of violating D.R. 1-102(A)(4) and 4-101(B)(1), and the board agrees.

Petitioner presses his exceptions to the hearing committee report and insists that respondent has by his indiscreet behavior, that is, in his intimate sexual relationship with Mrs. [F], portrayed a distinctively lecherous inclination and respondent did violate D.R. 1-102(A)(6) adversely reflecting on respondent's fitness to practice law.

The hearing committee found there was *no* violation of Disciplinary Rule 1-102(A)(6). The board agrees that respondent's relationship with Mrs. [F], including the social activities and intimacies, did not amount to violation of that rule.

## CHARGE 4—[G]

Respondent is charged with violation of:

Disciplinary Rule 1-102(A)(6)—engage in any conduct adversely reflecting upon his fitness to practice law.

Disciplinary Rule 6-101(A)(3)—shall not neglect a legal matter entrusted to him.

Disciplinary Rule 1-102(A)(1)—violation of a disciplinary rule.

[G] was charged with a crime in [X] County and retained respondent to represent him on August 20, 1975. On September 22, 1975, after a jury trial, [G] was found guilty of the charge. Sentence was postponed pending motions. A week later, a motion for new trial was filed and that motion requested that the notes of testimony in the trial be transcribed. It was the policy, custom and practice in [X] County at that time that the reporter was to be paid for his transcription in advance of preparing it. Respondent made no arrangements in advance to pay the cost of the transcript or to guarantee the payment of the transcript. On February 25, 1976, [G] appeared for sentencing without counsel and without action having been taken on the outstanding motion for a new trial. Sentence was necessarily deferred pending the substitution of counsel by [G], transcription and filing of the notes of testimony and resolution of the motion for new trial. In the meantime, on November 24, 1975, respondent

was suspended from the practice of law effective 30 days after date of the order for a period of three months. He failed to give [G] any notification of this suspension.

Respondent contends that his failure to give the required notice under Rule 217 was a simple and honest oversight on the part of himself or on the part of his secretary and that no neglect of a legal matter had been shown in that once respondent filed a motion for new trial, nothing else had to be done until the motion was argued.

The committee found violations of D.R. 6-101(A)(3)—neglect of a legal matter, D.R. 1-102(A)(6)—conduct adversely reflecting the fitness to practice law, D.R. 1-102(A)(1)—violation of a disciplinary rule. The disciplinary board agrees that there is evidence sufficient to find violation of the disciplinary rules.

Respondent raises an interesting question concerning the alleged violation of D.R. 1-102(A)(1), that is, relating to his failure to send [G] a Rule 17-17 notice of suspension. Respondent takes the position that even if he had failed to comply with Rule 217 (17-17), his failure to comply was not in violation of a disciplinary rule but was just in violation of a procedural rule. He argues that the disciplinary rules of enforcement do not rise to the level of the Code of Professional Responsibility. As a result it is respondent's position that he would deny the applicability of D.R. 1-102(A)(1) to a violation of former Rule 17-17.

The board agrees with the arguments advanced by petitioner in his brief opposing exceptions to the hearing committee report, page 10, arguing that the definition of the term "disciplinary rule" was meant to be applied in the generic sense and to

embrace those "rules of disciplinary enforcement" adopted by the courts of the various jurisdictions.

## CHARGE 5—[H]

Respondent is charged with violation of the following disciplinary rules:

Disciplinary Rule 1-102(A)(1)—a lawyer shall not violate a disciplinary rule.

Disciplinary Rule 1-102(A)(6)—shall not engage in any conduct that adversely reflects on his fitness to practice law.

Disciplinary Rule 6-101(A)(3)—neglect of a legal matter entrusted to him.

In August of 1975, [H] was arrested on a charge of operating a motor vehicle while under the influence of intoxicating liquor. [H] retained respondent to represent him and on September 8, 1975, paid respondent a $150 retainer. Pursuant to the instructions of respondent, [H] and his wife went to respondent's office where, upon the advice of respondent, [H] signed a waiver of arraignment and was told by respondent that the waiver would be filed by respondent and that, in view of the filing of the waiver, [H] did not need to appear at an arraignment which was scheduled for November 25, 1975. Respondent did not file the waiver. [H] was later arrested and charged for the failure to appear. Between September 8, 1975, and November 25, 1975, respondent received notice of his suspension from the practice of law. As a formerly admitted attorney, respondent had an obligation to properly notify by registered or certified mail each of his clients involved in pending litigation of his inability to act as his attorney after the effective date of his

suspension. As of January, 1976, respondent had failed to give [H] any notice of his suspension.

After her husband's arrest for failure to appear at the arraignment, Mrs. [H] called on respondent, at which time respondent told her that he was "holding all of the papers," including the waiver of arraignment, concerning [H's] case until such time as respondent would be reinstated to the practice of law, and indicated that he expected to continue to represent [H] after the expiration of his suspension from the practice of law. At no time did respondent advise Mrs. [H] to seek other legal counsel to act immediately on her husband's behalf nor did he advise her to inform her husband.

In its argument to the board, petitioner vigorously presses the position that respondent had deliberately decided not to send [H] a notice of his suspension in accordance with the appropriate rule since it was his intention to hold [H's] papers until such time as his suspension period was ended and thereafter continue to represent [H].

Respondent contends that the record fails to show that his failure to file [H's] waiver was inexcusable neglect. If there was any neglect at all, it was in respondent's having failed to specifically ascertain from grand jury records whether or not [H] had been indicted. The hearing committee and this board agree with respondent's contention that the record contains insufficient evidence to support a finding of the violation of D.R. 102(A)(1). The hearing committee concluded that respondent had violated D.R. 6-101(A)(3) by neglecting a legal matter entrusted to him, that is, in failing to file [H's] waiver of arraignment which respondent had promised to do. The hearing committee further

found respondent in violation of D.R. 1-102(A)(6) in that the foregoing described conduct adversely reflected on his fitness to practice law.

The board's recommendation is that the hearing committee's conclusions of law be adopted and that respondent did violate D.R. 6-101(A)(3) and D.R. 1-102(A)(6).

## CHARGE 6—[I]

In this matter, respondent is charged with the violation of:

Disciplinary Rule 1-102(A)(4)—conduct involving dishonesty, fraud, deceit or misrepresentation, and

Disciplinary Rule 1-102(A)(6)—other conduct adversely reflecting upon his fitness to practice law.

In this matter, no testimony was taken. The entire evidence presented was a stipulation (petitioner's exhibit 46), along with petitioner's exhibits 6-A and 6-B. On or about June 2, 1973, [I] was arrested on charges involving the operation of a motor vehicle under the influence of intoxicating liquor. At the time of his arrest, [I] had been operating the motor vehicle while his driver's license was under suspension and an additional charge was filed against him. [I] was unable to secure his release on bail and was committed to the [X] County jail. While a prisoner there, additional charges were filed against him by another prisoner.

On or about July 6, 1973, [I] made an application for the services of the public defender of [X] County and was accepted as being eligible therefor, at

which time respondent was an assistant public defender for [X] County. On October 4, 1973, respondent in his capacity as an assistant public defender filed an application to reduce bail on behalf of [I]. That petition included the following allegations: "6. If released on bail, he ([I]) is able to secure employment, a job is waiting for him at [Corp.] in [    ], Pennsylvania."

The court released [I] on nominal bail.

Trial on all charges was scheduled for February 4, 1974. [I] contacted respondent and asked respondent to represent him as public defender. Respondent informed him that he could not represent him as a public defender but would accept him as a private client provided [I] paid respondent a retainer fee of $200. [I's] father paid the fee of $200. Thereafter [I] entered a plea of guilty to the offenses involving the vehicle and the other charges. The plea of guilty was entered on February 6, 1974. For one reason or another [I] was not called for sentence on those charges until October 9, 1975. In the meantime, respondent had resigned as public defender of [X] County on November 15, 1974. Respondent did not appear on October 10, 1975, to represent [I] at his sentencing but instead [I] was represented by [J], Esq., who was at that time the public defender of [X] County.

Petitioner contends that respondent purposely misled [I] by telling him that he, respondent, could not represent [I] as a public defender but could represent him as a private client. Petitioner further contends that respondent failed to follow through with his representation of [I] as a private client at the time of sentencing in October, 1975, and further that when respondent was contacted in October,

1975, and informed that [I's] sentencing was scheduled, respondent responded by replying that the [I] case was a matter for the public defender and not a private client of respondent.

On the other hand, respondent contends that [I], in fact, did not qualify for public defender services and that since he did not so qualify, it would have been impossible for respondent to have represented him as a client of the public defender. Respondent contends that his failure to appear at [I's] sentencing was the result of an honest mistake, which occurred as a result of the passage of some 20 months between the plea of guilty and the sentencing and which confusion, in fact, was an "honest error." Respondent further contends that he is being found guilty of the violation of a rule with which he had not been charged. He contends that the hearing committee has found him guilty, in fact, of "neglecting a legal matter entrusted to him" when he has not been charged with that rule violation but instead has been charged with "conduct adversely reflecting upon his fitness to practice law."

The board would recommend to this honorable court that the charges against the respondent relating to charge no. 6 be dismissed.

## CHARGE 7—[K]

Respondent is accused of violating:

Disciplinary Rule 1-102(A)(4)—dealing with conduct involving dishonesty, fraud, deceit and misrepresentation, and

Disciplinary Rule 1-102(A)(6)—dealing with other conduct adversely reflecting upon his fitness to practice law.

On September 25, 1972, [K] was indicted in [X] County, Pa., for the murder of his wife. He was apprehended and returned to the jurisdiction in November, 1973. On December 20, 1973, [K] was scheduled for arraignment on the charge of murder. Prior to that time, [K's] mother had contacted respondent and was at the time of the arraignment negotiating with respondent to represent her son as a private client. Respondent was, at the time, the assistant public defender and later on the public defender of [X] County.

In January of 1974, Mrs. [K] agreed to pay respondent $3,000 to represent her son, which respondent undertook to do. In November, 1974, [K] pleaded guilty to second degree murder on advice of respondent.

At no time during negotiations between respondent and Mrs. [K] did respondent reveal to Mrs. [K] that he was a member of the office of public defender either as the public defender or as assistant public defender. The disciplinary counsel contends that respondent, in the course of his negotiations with Mrs. [K], should have advised her that her son would be entitled to the services of the public defender at no charge if he were so qualified, that is, if he were indigent. Respondent contends that there was no question of indigency since Mrs. [K] had indicated her ability and willingness to pay a fee on behalf of her son.

Charge no. 7 and charge no. 6 are similar in that they involve respondent's acting in his capacity as public defender on the one hand and as private counsel on the other. In charge no. 7, there is the legal issue as to whether or not [K] was actually entitled to services of the public defender since his

mother was able to pay for these services and, if the determination is that he was eligible or might have been eligible, did respondent have the duty to disclose this fact to Mrs. [K]. In light of the fact that Mrs. [K] was able and willing to pay for services, respondent was in a position of being required under the law or his understanding of the law to deny her application for public defender's services. Under these circumstances, it appears to be an idle gesture for him, that is respondent, to suggest to Mrs. [K] that she proceed by requesting public defender services since she had already indicated an ability to pay for legal services.

The board recommends that charge no. 7 be dismissed.

## DISCUSSION

The court has set forth standards by which the board must be guided in matters involving disciplinary procedures initiated against members of the bar.

"Integrity and the exercise of good faith in an attorney's professional engagements are essential for the protection of the public, the courts and the profession, itself." In the matter of Marx S. Leopold, 469 Pa. 384, 366 A. 2d 227, 230 (1976).

In September, 1972, respondent began practicing law "on his own," (respondent's brief in opposition to petitioner's exceptions, p. 10). Within a period of three years this "neophyte lawyer" had become the subject of multiple complaints by clients and others with whom he had come in contact. He had been suspended from the practice of law and additional charges, impressive in scope and variety, had been

filed against him. In reporting on matters presently before it, this board finds that respondent has violated the Code of Professional Responsibility as follows:

D.R. 1-102(A)(6)—conduct adversely reflecting on fitness to practice law. ([B, G, H])

D.R. 1-102(A)(4)—conduct involving dishonesty, fraud and deceit. ([D, E, and F])

D.R. 1-102(A)(1)—violation of a disciplinary rule. ([G])

D.R. 2-110(A)(3)—dealing with refunding of fees not earned. ([D and E])

D.R. 4-101(B)(1)—revealing a confidence or secret of a client. ([F])

D.R. 5-105(A)— a lawyer representing different interests. ([D and E])

D.R. 6-101(A)(3)—Neglect of a legal matter. ([G and H])

There is unanimity among the members of the board that respondent did not demonstrate the integrity and exercise of good faith in his professional engagements that are demanded of the legal practitioner, young or old. As the result of this finding, the board is prepared to recommend an enlargement of the period of suspension.

When petitioning for reinstatement under Pa.R.D.E. 218, "the formerly admitted attorney shall have the burden of demonstrating by clear and concise evidence that he has the moral qualifications, competency and learning in law required for admission to practice law in this Commonwealth and that his resumption of the practice of law within the Commonwealth will be neither detrimental to the integrity and standing of the bar

or the administration of justice nor subversive of the public interest. . . ."

Petitioner, [   ], appears to have carried that burden insofar as his competency and learning in the law is concerned. He called the assistant district attorney of [X] County, Mr. [   ], and ten members of the bar to testify on his behalf to that end. They testified that petitioner was, in their opinion, considerably more skilled than the average practitioner and that he could be relied upon to have properly prepared the case being presented by him. From the record it appears that respondent vigorously represented the clients in whatever manner he was retained or appointed. The record otherwise supports the witnesses who testified to [respondent's] competence. There is no doubt that he has performed effectively for some of his clients, even those in whose matters he has been cited for misconduct ([K, I]). He has been effective in preparing his own case before the hearing committee and in writing the several briefs presented and in arguing the matter at great length and with some persuasiveness before members of the board sitting as a panel to hear oral argument.

The issues of respondent's moral qualifications and integrity present more serious problems to the board. Disciplinary counsel challenges petitioner's moral qualifications for reinstatement. He has urged the board in the most vigorous manner to recommend against reinstatement of petitioner on the grounds that to do otherwise would undoubtedly be detrimental to the integrity and standing of the bar and the administration of justice and that further to reinstate [respondent] would be subversive of the public interest.

While reading the record, it is easy to find instances in which [respondent] apparently deliberately tested the patience of the hearing committee and disciplinary counsel. He was argumentative, facetious at times and on occasion disrespectful. His tactics were tiresome and at times obstructive. Respondent, himself, cannot but admit that expressions of temper were frequent and offensive and occurred under such circumstances as to bring respondent's judgment into question. It could not seriously be argued otherwise when respondent by using foul language aggressively and directly attacked trooper [B] while calling him from the police station.

In almost every charge where an issue of respondent's credibility was involved, the hearing committee elected to believe he was mistaken or untruthful. The record itself contains substantial evidence that [respondent] has a "convenient memory." In the matter of [L] D.C. Ex. 107, N.T. 1215 et seq., [respondent] had no recall as private counsel that he had accepted a fee from [L] and later participated in his defense as public defender. In the matter of [I] (petitioner's exhibit 6-B, paragraph 12, 14), [respondent] had no recollection of representing [I] as a private client when he was scheduled for sentencing. In the matter of trooper [B] (petitioner's exhibit 1-A, 1-B, paragraph 4), [respondent] offered an explanation and excuse of certain unprofessional conduct toward [B] by accusing the officer of "harassing" the accused then being represented by respondent. In fact, that was not the case. The trooper had not had contact with [respondent's] client in any way that could even remotely be considered to be harassing.

At oral argument, respondent frequently and with tempered passion proclaimed his love for the law and his new-found respect for its ethical concepts. His conduct, however, demonstrates an ambivalence toward the letter and spirit of the Code of Professional Responsibility that belies his protestations of affection. As an example: [respondent] called [J], who testified on reinstatement as [respondent's] witness (N.T. 1076). As part of his direct examination, [J] testified that [respondent] had maintained a sign advertising [respondent] as an attorney-at-law for some period of time up until a few days before he appeared to testify on [respondent's] behalf. [J's] testimony was taken March 9, 1977. [Respondent] was suspended in December, 1975. The testimony is clear that [respondent] maintained a sign advertising himself as an attorney-at-law for that period of time.

[Respondent] presented himself for cross-examination (N.T. 1120) and was asked the following questions:

"Q. Mr. [respondent], up until approximately two weeks ago, you continued to retain a sign outside your law office indicating your name and the fact that you were an attorney at law, is that correct?

"A. Except the sign said [respondent, Esq.], Lawyer, [   ] North Second Street. (N.T. 1126).

"Q. And that sign remained outside your law office on the first floor facing the street from December, 1975 until approximately two weeks ago (February, 1977), is that not correct?

"A. Just a little bit, yes, *if I had anything to do with it, it would still be there.*" (Emphasis ours.)

The issue concerning this sign and other signs was gone into at some length during the March,

1977, hearing. Respondent's conduct relative to the sign or signs was commented upon extensively by disciplinary counsel in his brief on exceptions to the hearing committee report at pages 33 and 34. In his brief, disciplinary counsel cited the applicable statute which he argued obtained in this particular case. [Respondent] allowed the sign in question or some other sign advertising him to be an attorney-at-law in a place where such sign was easily observable by the general public. As of the middle of September, 1977, and perhaps thereafter, that sign or some similar sign remained in place.

The hearing committee in its report filed February 8, 1978, page 4, found in its conclusions that respondent's continued use of office signs ". . . identifying him as 'lawyer' and 'attorney-at-law' adversely reflects upon his fitness to be readmitted to the practice of law." With this the board agrees. Obviously [respondent] has at least one other thing to learn about the practice of law. The law is an honored profession and needs to be treated with respect. The practice does not depend solely on the efficiency of and the results achieved by the practitioner but to some extent requires a temperance of conduct that has been sorely lacking in [respondent's] practice.

It was said, however, about respondent in his brief: "Our system needs competent, dedicated and zealous advocates. It sometimes takes time to learn that one can be over-zealous and over-dedicated. The maturing process of professionals occur (sic) in different ways." With this the board also agrees. It is apparent that respondent, [ ], is bound and determined to learn "the hard way." Nevertheless, it is the conviction of the members of the disciplinary board that [respondent] can acquire the character traits necessary to meet the requirements of

Pa.R.D.E. 218. For that reason, an additional period of suspension is recommended. In that time, petitioner may decide whether he wishes to make the necessary adjustments to his method of practicing law (N.T. 1118) and to his personality (N.T. 1119).

## RECOMMENDATION

The disciplinary board, therefore, recommends to this honorable court that at no. 28 D.B. 73, the petition for reinstatement be denied, and that at no. 14 D.B. 76, the recommendation of the hearing committee that respondent be disciplined by further suspension be affirmed as modified and that it further be recommended to this honorable court that respondent's period of suspension be extended until March 1, 1979, and that petitioner be granted the right to apply for reinstatement on or after that date, provided that expenses incurred in connection with the petition for reinstatement in the amount of $3,398.23 are paid.

Messers. Reath and Johnson did not participate in the adjudication.

## ORDER

EAGEN, *C.J.*, And now, May 8, 1978, the report and recommendations of the disciplinary board of the Supreme Court of Pennsylvania dated April 4, 1978, on petition for reinstatement at board file no. 28 D.B. 73, and petition for discipline at board file no. 14 D.B. 76, are hereby approved; and it is ordered and decreed, that the petition for reinstatement at board file no. 28 D.B. 73 is denied. At board file no. 14 D.B. 76, [respondent] is disciplined by

further suspension and the period of such suspension is extended to March 1, 1979; and it is further ordered, that respondent may apply for reinstatement on or after March 1, 1979, provided that the expenses incurred in connection with the petition for reinstatement are paid.